Filed 11/23/22  P. v. Yuriar CA2/3

Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE YURIAR,<br><br>    Defendant and Appellant. | B305575<br><br>(Los Angeles County<br>Super. Ct. No. BA038224) |

APPEAL from an order of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Remanded with direction.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

In 1993, a jury convicted Jose Yuriar of first degree murder and found true the special circumstance allegation that the murder was committed while Yuriar was engaged in the commission of attempted robbery. In 2019, Yuriar petitioned for vacation of his murder conviction and resentencing under then recently-enacted Penal Code[1] section 1172.6.[2] The trial court summarily denied relief, and we affirmed that order on appeal. (*People v. Yuriar* (Oct. 19, 2021, B305575 [nonpub. opn.].) Our California Supreme Court granted review and has now transferred the matter back to us with the direction to vacate our decision and to reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Doing so, we conclude that remand is required.

## BACKGROUND[3]

I.    The murder, Yuriar's conviction, and original appeal

In May and June of 1990, Fullerton police officers were conducting a "reverse sting" operation involving a large quantity of cocaine.[4] A confidential informant facilitated discussions between undercover officer Tommy DeLaRosa and potential

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3]    The background is derived in part from our unpublished opinion in this case, of which we have taken judicial notice at respondent's request. (Evid. Code, §§ 451, 459.)

[4]    A "reverse sting" occurs when police officers pose as sellers of previously seized narcotics.

purchasers. After numerous meetings and phone calls involving multiple people, Jose Rodriguez agreed to buy 200 kilos of cocaine. The exchange was set to take place at a residence on Arrington in Downey. On the afternoon of June 21, 1990, DeLaRosa drove with Rodriguez, in a van containing the cocaine, to the Arrington residence. Several police officers followed them, keeping their distance to avoid detection; 25 additional officers and a police helicopter conducted surveillance of the men as they approached the house. The Arrington property was comprised of two houses, separated by a patio. When DeLaRosa walked down the driveway and into the house, he disappeared from the view of the surveilling officers. He was immediately ambushed by Rodriguez and persons inside the residence, including Yuriar and codefendants Jesus Araclio and Raul Meza. Shot five times, DeLaRosa succumbed to his injuries. Before he died, he was able to return fire, killing Rodriguez and wounding Yuriar and Araclio.

Immediately after the shooting, Araclio and Yuriar ran across the street to a neighbor's home and entered without knocking. Despite the neighbor's command to get out, they hid in a bathroom after stowing a Colt Super .38-automatic handgun and a sawed-off Browning pump action shotgun in the neighbor's bedroom. Police discovered the men and the guns in the house.

The evidence showed Rodriguez fired nine shots from a nine-millimeter gun, hitting DeLaRosa at least twice. Araclio fired the Colt Super .38-automatic four times. Yuriar fired the shotgun once. Meza also fired shots, using a gun that police later found in a nearby dumpster.

Yuriar's jury was instructed on felony murder, aiding and abetting, and a robbery-murder special circumstance allegation.

It was not instructed on the natural and probable consequences doctrine.

The jury convicted Yuriar of first degree murder (§ 187, subd. (a)) and attempted robbery (§§ 664, 211), and found true the special circumstance allegation that the murder was committed during commission of an attempted robbery (§ 190.2, subd. (a)(17)(A)). It also found Yuriar personally used a firearm in commission of the offenses (§ 12022.5, subd. (a)) and that a principal was armed with a firearm (§ 12022, subd. (a)(1)). The trial court sentenced Yuriar to life in prison without the possibility of parole, plus four years.

A different panel of this Division affirmed Yuriar's convictions. (*People v. Meza et al.* (Feb. 27, 1996, B090632) [nonpub. opn.].) Among other things, the court rejected the contention that the trial court committed instructional error by failing to define "reckless indifference" in the jury instruction on the special circumstance allegation. The court held that there was no sua sponte duty to define "reckless indifference," a phrase commonly understood to mean conscious disregard for the possibly fatal consequences of one's actions.

The court further reasoned: "From the evidence in the present case, it appears appellants actively participated in the killing of DeLaRosa by ambushing him in a cross-fire, and clearly, they intended to kill him. They were not minor participants without the criminal intent to kill." "[A]lthough appellants were charged with a special circumstance which made them eligible for the death penalty, the jury chose not to impose such a sentence, and any error, *if there was one, was harmless beyond a reasonable doubt, since, under the circumstance*[s]*, the verdict could not have been affected*. [Citation.] Meza was an

4

actual killer and Yuriar and Araclio were, if anything, aiders and abettors, not only to the robbery, but to the murder of DeLaRosa. DeLaRosa was killed within minutes of his arrival on the premises. The people shooting, including Yuriar and Araclio, intended to kill him immediately so they could take the cocaine they thought was in his van. Both Yuriar and Araclio fired at DeLaRosa as he ran from the house after the shooting began. Appellants did not act merely with reckless indifference to human life, and from the evidence, no reasonable jury could have found this to be true. Clearly, appellants subjectively appreciated and knew their acts were likely to result in DeLaRosa's death." (Italics added.)

*People v. Meza* further concluded that the evidence was sufficient to support the true finding on the special circumstance allegation, reiterating: "When DeLaRosa finally arrived at the house where the cocaine was to be transferred, appellants were armed and clearly [a]waiting his arrival. DeLaRosa was killed within minutes of his arrival in a cross-fire of bullets. Contrary to appellants' argument, there was sufficient evidence, together with the reasonable inferences therefrom, for the jury properly to conclude appellants knew DeLaRosa possessed a substantial amount of cocaine and that they intended to kill him in order to take it from him by force against his will and were, therefore, guilty of attempted robbery and murder in the course of the attempted robbery."

II.     The section 1172.6 petition

In 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Yuriar filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he was not the actual killer; he did not, with the intent to kill, aid and abet the actual killer; he was not aware the victim was a peace officer acting in the performance of his duties; and he could not now be convicted of first degree felony murder in light of changes to section 189 effectuated by Senate Bill 1437.  He also checked a box requesting that counsel be appointed for him.

The People opposed the petition, arguing, among other things, that Yuriar was ineligible because, as stated in this court's prior opinion, the jury's true finding on the special circumstance allegation indicated he was either a direct aider and abettor who acted with the intent to kill or was a major participant who acted with reckless indifference to human life.

On February 28, 2020, the trial court summarily denied the petition.  Yuriar was not present and was not represented by counsel.  The court found Yuriar ineligible for relief because the "facts as set forth in the Court of Appeal decision in this matter show that the Defendant was either a direct aider and abettor to the robbery or to the murder itself."  After briefly summarizing the facts of the case as described in the prior opinion, it continued:  "The Court of Appeal found that Petitioner was an aider and abettor to both the killing and the robbery.  The Court of Appeal found that Petitioner acted with reckless indifference to life.  [¶]  Based on the above facts as set forth in the decision by

6

the Court of Appeal, the Petitioner has failed to show a prima facie case for relief."

Yuriar appealed the order denying his petition, and this Division affirmed the order. (*People v. Yuriar*, *supra*, B305575.) Relying on *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), this Division said that the failure to appoint counsel for Yuriar was harmless because the jury's true finding on the special circumstance allegation precluded relief.

Thereafter, our California Supreme Court issued *Strong*, *supra*, 13 Cal.5th 698, which further clarified the scope of section 1172.6. Specifically, *Strong* held that a special circumstance finding predating *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—cases that substantially narrowed and clarified the class of defendants who are major participants who act with reckless indifference to human life during a felony—does not preclude eligibility for resentencing under section 1172.6. As we now explain and as the People concede, remand is now required.

## DISCUSSION

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) As relevant here, Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and

abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile*, at p. 842.)

Senate Bill 1437 also added section 1172.6, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1172.6 if the defendant meets three conditions: (1) the defendant must have been charged with murder under a theory of felony murder, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1172.6, subd. (a).) If a petitioner makes a prima facie showing of entitlement to relief, the trial court shall issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3)).

The defendant is entitled to the appointment of counsel, if requested, upon the filing of a facially sufficient petition, that is, one that makes the necessary averments, without regard to his or her eligibility for relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) If the trial court determines that the petitioner has made such a prima facie showing, it must issue an order to show cause and "then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the

8

petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' " (*Id*. at p. 960.) In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1172.6, subd. (d)(3); *Lewis*, at p. 960.) At the section 1172.6, subdivision (d)(3) hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt.

Previously, we had held that any error in failing to appoint counsel for Yuriar was harmless because he was ineligible for relief based on the jury's true finding on the special circumstance allegation. However, *Strong*, *supra*, 13 Cal.5th at pages 719 to 720, held that a pre-*Banks* and *Clark* finding that the defendant was a major participant who acted with reckless indifference to human life does not preclude the defendant from making a prima facie case for relief under section 1172.6, even if the trial evidence was sufficient to support the findings under *Banks* and *Clark*. Because the special circumstance finding here predated *Banks* and *Clark*, the finding does not preclude Yuriar's eligibility for possible resentencing. Therefore, Yuriar is entitled to appointment of counsel and to an evidentiary hearing under section 1172.6, subdivision (d)(3).

9

## DISPOSITION

The order denying Jose Yuriar's petition is reversed and the matter is remanded with the direction to the trial court to appoint counsel for Yuriar, to issue an order to show cause, and to conduct an evidentiary hearing in accordance with Penal Code section 1172.6, subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

LAVIN, J.

EGERTON, J.